**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

SENIOR EXECUTIVES ASSOCIATION
77 K Street N.E., Suite 2600
Washington, DC 20002

AMERICAN FOREIGN SERVICE
ASSOCIATION
2101 E Street N.W.
Washington, DC 20037

ASSEMBLY OF SCIENTISTS
1025 Connecticut Avenue N.W., Suite 601
Washington, DC 20036

NATIONAL ASSOCIATION OF
IMMIGRATION JUDGES
120 Montgomery Street, Suite 800
San Francisco, CA 94104

JOSHUA ZIMMERBERG
2300 N Street N.W.
Washington, DC 20037

EVELYN UPCHURCH
2300 N Street N.W.
Washington, DC 20037

MICHAEL RYSCHKEWITSCH
2300 N Street N.W.
Washington, DC 20037

JANICE CARAMANICA
2300 N Street N.W.
Washington, DC 20037

JANE DOE 1
2300 N Street N.W.
Washington, DC 20037

JANE DOE 2
2300 N Street N.W.
Washington, DC 20037

**Civil Action No.**

JANE DOE 3
2300 N Street N.W.
Washington, DC 20037

v.

UNITED STATES OF AMERICA
950 Pennsylvania Avenue N.W.
Washington, DC 20530

DON W. FOX, ACTING DIRECTOR OF
  OFFICE OF GOVERNMENT ETHICS
1201 New York Avenue N.W., Suite 500
Washington, D.C. 20005

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      This action is brought to prevent the most sensitive and private financial information of some 28,000 Executive Branch employees, including both civilian and military personnel, from being posted on the Internet for anyone in the world to see with the click of a mouse.  This publication will not be made by some hacker or leaker but by the federal agencies that employ these individuals.

2.      By August 31, 2012, federal agencies must post detailed financial data regarding the assets and financial transactions of these senior federal employees and their spouses and dependent children on the Internet.  No login will be required, no request will have to be made, and no record will be kept of those persons who view, download, and possibly use the information for any purpose, no matter how criminal or misguided.  Absent injunctive relief from this Court, thousands of federal civilian and military personnel and their families will become

easy targets for identity theft, financial fraud, and even kidnapping when the nature, extent, and location of their financial assets become freely available worldwide.

3.    This startling publication of private information is mandated by the Stop Trading on Congressional Knowledge ("STOCK") Act, P.L. 112-105, 126 Stat. 291, signed into law on April 4, 2012.  That Act was proposed in response to news stories and allegations that Members of Congress were exempt from insider trading laws and had the ability to profit from the misuse of non-public information.  As originally introduced, the legislation applied only to Members of Congress and their staffs.  Certain Executive Branch employees, including members of the Senior Executive Service ("SES") and senior military officers, were added by a subsequent amendment, without any congressional hearing, and despite the fact that these Executive Branch employees were already subject to strict financial disclosure provisions and extensive conflict of interest rules.

4.    This action seeks to prevent the irreparable harm that Plaintiffs would otherwise suffer as a result of the unwarranted and unconstitutional dissemination of their private financial information on the Internet.

5.    In addition to the gross invasion of personal financial privacy, Internet publication will expose senior employees (including military and diplomatic employees) to personal danger and will endanger our national security.  These harms were starkly detailed in a letter sent to congressional leaders on July 19, 2012, by former Secretary of Homeland Security Michael Chertoff, former Attorney General Michael Mukasey, former CIA Director Michael Hayden, former Director of National Intelligence Mike McConnell, and ten other very senior former federal officials in law enforcement, diplomatic, and national security positions.  In their letter, these senior officials explain:

Placing complete personal financial information of all senior officials on the Internet would be a jackpot for enemies of the United States intent on finding security vulnerabilities they can exploit.  SF-278 forms include a treasure trove of personal financial information:  the location and value of employees' savings and checking accounts and certificates of deposit; a full valuation and listing of their investment portfolio; a listing of real estate assets and their value; a listing of debts, debt amounts, and creditors; and the signatures of the filers.  SF-278s include financial information not only about the filing employee, but also about the employee's spouse and dependent children.

Posting this detailed financial information on the Internet will jeopardize the safety of executive branch officials – including military, diplomatic, law enforcement, and potentially intelligence officials – and their families who are posted or travel in dangerous areas, especially in certain countries in Asia, Africa, and Latin America.  Embassy and military security officers already advise these officials to post no personal identifying information on the Internet.  Publishing the financial assets of these officials will allow foreign governments, and terrorist or criminal groups to specifically target these officials or their families for kidnapping, harassment, manipulation of financial assets, and other abuse.

Equally important, the detailed personal financial information – particularly detailed information about debts and creditors – contained in the SF-278s of senior officials is precisely the information that foreign intelligence services and other adversaries spend billions of dollars every year to uncover as they look for information that can be used to harass, intimidate and blackmail those in the government with access to classified information.  Yet under the STOCK Act, these SF-278s will be placed on the Internet for any foreign government or group to access without disclosing their identity or purpose and with no notice to the employees or their agencies.  We should not hand on a silver platter to foreign intelligence services information that could be used to compromise or harass career public servants who have access to the most sensitive information held by the U.S. government.

## JURISDICTION AND VENUE

6.      This court has jurisdiction under 28 U.S.C. § 1331 (federal question).  Venue is proper in this District under 28 U.S.C. § 1402(a)(1) as one or more Plaintiffs reside in this judicial district.

## THE PARTIES

7.      Plaintiffs are individual senior executive officials within the Executive Branch in positions that obligate them to make reports under the Ethics in Government Act, 5 U.S.C.

4

App'x § 101 *et seq.* ("EGA"), and the STOCK Act.  The Plaintiffs face potential irreparable

harm if Internet publication goes forward.  Several organizations whose membership includes

such senior executive officials are also Plaintiffs.  The Plaintiffs are the following:

- Senior Executives Association ("SEA"), a non-profit professional association representing the approximately 7,000 career Senior Executives in the U.S. Government.  SEA's goals include improving the efficiency, effectiveness, and productivity of the federal government and advocating on behalf of the interests of career federal executives.

- American Foreign Service Association ("AFSA"), a professional association representing more than 31,000 active and retired Foreign Service employees of the Department of State and Agency for International Development, as well as smaller groups in the Foreign Agricultural Service, U.S. & Foreign Commercial Service, and International Broadcasting Bureau.  AFSA's principal missions include enhancing the effectiveness of the Foreign Service, protecting the professional interests of its members, and ensuring the maintenance of high professional standards for career diplomats and political appointees.

- Assembly of Scientists, an organization of 45 U.S. scientists, the mission of which is to provide a community for those who wish to seek fundamental knowledge about the nature and behavior of the universe at any scale, and to apply that knowledge to enhance the quality of life, including improving health, lengthening life, and reducing the burdens of illness and disability.

- National Association of Immigration Judges ("NAIJ"), the certified representative and recognized collective bargaining unit of the approximately 250 immigration

judges in the U.S. and its territories.  NAIJ members conduct trial level adversarial proceedings to determine if individuals charged by the Department of Homeland Security for being in violation of U.S. immigration laws are in fact removable, or whether they may be eligible for any relief from deportation.

- Joshua Zimmerberg ("Zimmerberg"), Head of the Program in Physical Biology at the Eunice Kennedy Shriver National Institute of Child Health and Human Development ("NICHD"), which is part of the National Institutes of Health ("NIH").  Mr. Zimmerberg's current position is classified at the SES-level and he has been responsible for filing OGE Form 278s since 1990.  Mr. Zimmerberg resides in Maryland.

- Michael Ryschkewitsch ("Ryschkewitsch"), Chief Engineer for the National Aeronautics and Space Administration ("NASA").  Mr. Ryschkewitsch's current position is classified at the SES-level and he has been responsible for filing OGE Form 278s since 2007.

- Evelyn Upchurch ("Upchurch"), Field Operations Training Coordinator for the United States Citizenship and Immigration Services.  In June 2012, Ms. Upchurch resigned her position as Regional Director for the Central Region of the United States Citizenship and Immigration Services so that she would no longer be an SES-level employee.  Between 2001 and June 2012, Ms. Upchurch was an SES-level employee and was responsible for filing OGE Form 278s during that time period.

- Janice Caramanica ("Caramanica"), Associate Director and Acting Chief of the Intake and Resolution Section in the Office of Civil Rights, U.S. Department of

State.  Ms. Caramanica's position is one step below the SES-level.  She has decided to sop seeking a position at the SES-level because she is not willing to subject herself to Internet publication of her private financial information.

- Jane Doe 1, an administrative law judge employed by the United States Department of Justice with jurisdiction over immigration status cases in a metropolitan area ("Judge Doe").  Judge Doe's current position is classified at the SES-level and she has been responsible for filing OGE Form 278s since becoming an SES-level employee.

- Jane Doe 2 ("Doe 2").  Doe 2's current position is classified at the SES-level and she has been responsible for filing OGE Form 278s since 2007.

- Jane Doe 3 ("Doe 3") is employed by the Foreign Service.  Her position is classified at the Senior Foreign Services level and she is responsible for filing OGE Form 278s.

8.      Defendants are the United States and Don Fox, the Acting Director of the Office of Government Ethics ("OGE").  Defendant Fox is named in his official capacity only.

## FACTS

**A.      Pre-STOCK Act Reporting and Protections of Financial Information of Senior Executive Branch Employees**

9.      For more than three decades, high-level federal employees have been required to file annual financial disclosure reports with their agency's ethics officials pursuant to the Ethics in Government Act ("EGA").

10.     The EGA imposes financial reporting obligations for approximately 28,000 federal employees, including senior Executive Branch civil servants with pay above the GS-15

level or 120 percent of the minimum rate of basic pay payable for GS-15 level for positions not under the General Schedule.  All U.S. military officers ranking at or above grade O-7 are also covered.

11.    These federal employees file financial disclosure reports on forms created or approved by the Office of Government Ethics ("OGE").  The most recent version of the annual disclosure form is OGE Form 278 (Rev. 12/2011).

12.    The EGA, along with its related regulations and OGE Form 278, requires the disclosure of nearly all of an employee's assets, income, financial transactions, liabilities, and other personal information.  This disclosure requirement is not limited to the employees themselves, but in most cases also includes their spouses and dependent children.

13.    More specifically, OGE Form 278 filers must disclose the following, subject to certain threshold amounts and exceptions:

> a.   Interests in property, including real estate, stocks, bonds, securities, antiques or art held for resale or investment, beneficial interests in trusts and estates, bank deposits, pensions and annuities, mutual funds, accounts receivable, and capital accounts and other asset ownership in a business;
>
> b.   Investment income, including dividends, rents, interest, capital gains, and income derived from real estate, collectibles, stocks, bonds, notes, copyrights, pensions, mutual funds, life insurance contracts, loans, and personal savings accounts;
>
> c.   Noninvestment income, including salaries, fees, commissions, wages, retirement benefits, honoraria, prizes, and awards;

    d.   Purchases, sales, and exchanges of real property, stocks, bonds, commodity futures, mutual fund shares, and other forms of securities;

    e.   Gifts and reimbursements;

    f.   Liabilities;

    g.   Agreements or arrangements with respect to future employment, leaves of absences, continuing payments by a former employer, and continuing participation in an employee welfare or benefit plan maintained by a former employer;

    h.   Positions held outside the U.S. government as an officer, director, trustee, general partner, proprietor, representative, executor, employee, or consultant at any corporation, company, firm, partnership, trust, or other business enterprise, nonprofit organization, labor organization, or educational or other institution; and

    i.   Biographical information, including name, agency name, title of position and dates held, date of appointment, address, and telephone number.

14.    Employees required to file financial disclosure reports do so with their Designated Agency Ethics Officials, who must forward copies of the reports to the OGE for retention and final certification.  Agencies must retain the financial disclosure reports for six years after receipt.

15.    Although agencies were required to make these financial disclosure reports available to the public prior to the STOCK Act, the EGA limited public access and provided several safeguards for access to an individual's information:

a.  A person who wished to view or obtain a report had to submit an application in writing to the relevant agency, listing the requestor's name, occupation, and address; the name and address of any other person or organization on whose behalf the requestor was making the request; an affirmation that the requestor was aware of the prohibitions on obtaining or using the report; and an agreement by the requestor to abide by those prohibitions.  OGE Form 201 was used for such requests.

b.  The EGA required that an application requesting a financial report also be made available to the public throughout the period that the report is made available to the public.

c.  The EGA prohibited reports from being used for any unlawful purpose; for any commercial purpose, other than by news and communications media for dissemination to the general public; for determining or establishing the credit rating of any individual; or for use in soliciting money for any political, charitable, or other purpose.

d.  The Attorney General was authorized to bring a civil enforcement action against any person who used an individual's report for a prohibited purpose.

16.     In addition to these protections in the EGA, OGE Form 278s remained subject to the protections of the Privacy Act of 1974, 5 U.S.C. § 552a, which prohibits an agency from disclosing certain information except pursuant to prior written consent, "routine uses," and other listed exceptions.

17.     Under the Privacy Act, when an agency asks an individual to supply information, it must inform the individual of the authority that authorizes the solicitation of information, the

principal purpose for which the information is to be used, and the routine uses that may be made of the information.

18.     Accordingly, OGE Form 278 (Rev. 12/2011) included the following Privacy Act statement:

> The primary use of the information on this report is for review by Government officials to determine compliance with applicable Federal laws and regulations. This report may also be disclosed upon request to any requesting person pursuant to section 105 of the Act or as otherwise authorized by law.  You may inspect applications for public access of your own form upon request.  Additional disclosures of the information on this report may be made [pursuant to the exceptions listed in the Privacy Act].

19.     OGE also published its "routine uses" in the Federal Register, as required by 5 U.S.C. § 552a(e)(4)(D).  One such use was the disclosure of records pursuant to the request procedures and protections of EGA Section 105(b) described above.

20.     Under the procedures in effect prior to the STOCK Act, OGE reported receiving only 79 requests for access to Form 278 financial disclosures in 2008, down from 138 in 2007 and 155 in 2006.

21.     For requests directly to Executive Branch agencies other than OGE, applicants filed only 127 requests in 2008, down from 135 in 2007 and 138 in 2006.  Thus, only about 0.7% of covered employees' financial disclosure forms were actually subjected to public disclosure.

22.     Requests were typically directed at reports filed by the highest positions within the Executive Branch.  Financial disclosure reports for the vast majority of senior federal employees were never requested.

**B.      The STOCK Act**

23.      The STOCK Act was introduced in response to news stories and allegations that Members of Congress were using "insider information" to make money and investments, but, as Members of Congress, they could not be held liable for insider trading.

24.      As originally introduced, the STOCK Act applied only to Members of Congress and their staff.

25.      Executive Branch employees, including SES members, were added to the STOCK Act by a subsequent amendment.  These Executive Branch employees were already subject to strict financial disclosure provisions and extensive conflict of interest rules.  5 C.F.R. § 2635.703 prohibits an Executive Branch employee from engaging in a financial transaction using non-public information, or improperly using non-public information to further his own private interests or that of another, whether through advice or recommendation, or by knowing unauthorized disclosure.  5 C.F.R. § 2635.402 prohibits an Executive Branch employee from "participating personally and substantially in an official capacity in any particular matter in which, to his knowledge, he or any person whose interest are imputed to him . . . has a financial interest, if the particular matter will have a direct and predictable effect on that interest."  18 U.S.C. § 208 subjects Executive Branch employees to criminal penalties, including imprisonment and fine, for "participat[ing] personally and substantially as a Government officer or employee, in a judicial or other proceeding, application, request for a ruling or other determination . . . or other particular matter, in which, to his knowledge, he, his spouse, minor child . . . or any person or organization with whom he is negotiating or has any arrangement concerning prospective employment has a financial interest."

26.      These employees were included in the STOCK Act's Internet disclosure on what amounted to a "misery loves company" theory from the amendment's sponsor:

> "We have heard quite a bit from the President on the campaign trail about
> fairness.  But it appears there is no interest in fairness when it comes to
> transparency for the executive branch. . . .  It only seems fair that
> executive branch officials, who are already required to file annual
> financial reports, as we are, also be directed to meet the same additional
> reporting requirements being imposed on the legislative branch.  I have yet
> to hear a compelling argument against equity between the branches.  Some
> people have argued that the executive branch has other ways to deal with
> insider trading.  Think about it.  But none of those will subject executive
> branch employees to the same public scrutiny as this legislation would.  I
> believe what is good for the goose, it seems to me, should be good for the
> gander."

158 Cong. Rec. S297 (Feb. 2, 2012) (Sen. Shelby).

27.     No hearing was held on whether the STOCK Act should be extended to Executive

Branch employees.

28.     As passed by Congress and signed by the President, Section 11 of the STOCK

Act amended the EGA to require:  (1) additional reporting requirements for securities and real

property; (2) Internet publication of un-redacted employee financial disclosure reports by August

31, 2012; and (3) Internet publication within 18 months of fully searchable and sortable

databases containing the OGE Form 278 reports.

29.     In addition to the financial reporting requirements already mandated by EGA, the

STOCK Act also requires the reporting of certain real property and securities transactions shortly

after the transactions take place.  These reports must also be posted on the Internet.

30.     Concerning agency website publication, Section 11(a)(1) of the STOCK Act

requires online posting of Form 278's submitted by covered employees:

> Not later than August 31, 2012, or 90 days after the date of enactment of this Act,
> whichever is later, the President shall ensure that financial disclosure forms filed
> pursuant to title I of the Ethics in Government Act of 1978 (5 U.S.C. App. § 101
> *et seq.*), in calendar year 2012 and in subsequent years, by executive branch
> employees specified in section 101 of that Act are made available to the public on
> the official websites of the respective executive branch agencies not later than 30
> days after such forms are filed.

31.     Because the STOCK Act was enacted on April 4, 2012, August 31, 2012, is the applicable statutory deadline for agency website publication.  Pursuant to the Act, all financial disclosure forms filed with agency ethics officials between January 1, 2012, and July 31, 2012, must be published on the Internet by that date.  Virtually all 28,000 Executive Branch employees who are covered by the STOCK Act will have filed disclosure forms within those dates.  Forms filed subsequent to July 31 must be published on the Internet within 30 days of filing.

32.     The STOCK Act also directs the Director of OGE to create, within 18 months of the enactment of the STOCK Act, databases containing the financial disclosure forms of all covered Executive Branch employees, which will be maintained on the OGE's public website and will allow the public to search, sort, and download the data contained in the reports.

33.     The STOCK Act repeals the prior EGA requirements for public access to employee financial disclosure information.  No longer is a person wishing to obtain access required to submit an application containing his or her name, address and occupation, and the name and address of any other person or organization on whose behalf the applicant is seeking access.  The applicant also no longer has to affirm that he or she is aware of the prohibitions on obtaining or using information obtained from the financial disclosure reports, and agree to abide by the prohibitions.

34.     No login or identification will be required to obtain Internet access to the agency Internet postings to be made by August 31, 2012.  No login or identification will be required to view, search, and sort the data contained in the reports to be posted on the OGE website.  A login may be required for downloading data from the OGE website, but of course it is child's play to create an Internet login that reveals nothing about identity.

35.     Although some agencies may comply with the August 31, 2012, deadline for Internet availability simply by scanning and posting paper disclosure forms, other agencies plan to post the data in searchable form.

36.     The Internet publication by the agencies by August 31, 2012, will include Form 278s that were filed before the passage of the STOCK Act in reliance on provisions in the Form 278 that the OGE rules regarding public access would apply to those disclosures.

**Irreparable Injury**

37.     Publication of the financial disclosure forms of some 28,000 Executive Branch employees will cause them an immediate and irretrievable loss of their most private and confidential financial information.  Details of their financial affairs, and the financial affairs of their spouses and dependent children, will be available to anyone in the world (literally) who has access to the Internet.  No record will be made of who views or downloads the information.  No restrictions will be placed on how the information will be used or distributed.  Simply because they are senior civil servants or military officers, those Executive Branch Employees who file Form 278s will suffer the permanent loss of their confidential financial information.

38.     In addition to the forms of irreparable harm described in the July 19, 2012 letter of senior security officials described in paragraph 5, the individual plaintiffs and members of the organizational plaintiffs will suffer:

- The risk to judicial officials to intimidation and possible physical harm from litigants with ties to gangs or organized crime;

- The risk that the residence and locations visited by employees or spouses involved in intelligence activities will be located;

- The risk of an increase in fraudulent practices such as identity theft and phishing;

- The risk arising from exposure of data to disgruntled employees;

- The effect on family and personal relationships from ready access to the financial status of the 278 filers;

- The permanent and irretrievable loss of the financial privacy.

**First Cause of Action**
**United States Constitution, Right to Privacy**

39.     Defendants' acts and omissions described herein implementing Section 11 of the STOCK Act will violate Plaintiffs' constitutional right to privacy in their personal financial information by distributing that information indiscriminately across the Internet.

40.     Defendants' collection of additional personal financial information from the Plaintiffs, to be made accessible on the Internet in the future, will violate Plaintiffs' constitutional right to privacy in their personal financial information.

41.     Unless Defendants' unconstitutional acts are enjoined by the order of this Court, Defendants will cause irreparable injury to Plaintiffs, and Plaintiffs have no adequate remedy at law.

**Second Cause of Action**
**Administrative Procedure Act ("APA")**

42.     The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (5 U.S.C. § 706(2)(A)), and "contrary to constitutional right, power, privilege, or immunity" (5 U.S.C. § 706(2)(B)).  APA Section 702 provides a party "suffering legal wrong because of agency action," such as Plaintiffs, with the right of judicial review.  *Id.* § 702.

43.     Agencies of the United States have made a final determination, pursuant to the STOCK Act, to make the personal financial information that Plaintiffs are required by law to file with them available on their websites no later than August 31, 2012.  The agencies, with the assistance of Defendant Fox, the Acting Director of the Office of Government Ethics, are implementing that determination at this time.

44.     Defendant Fox has also caused the Office of Government Ethics to begin development of the database of Plaintiffs' personal financial information required by Section 11 of the STOCK Act.

45.     These actions, by federal agencies and/or officials acting under color of legal authority, are contrary to Plaintiffs' constitutional rights, powers, privileges, or immunities, and will cause Plaintiffs to suffer legal wrong.

46.     Agency implementation of the STOCK Act constitutes final agency action because agencies have a mandatory, nondiscretionary duty to implement the law.  This agency action is ripe for judicial review, and there are no administrative remedies that could redress the impending violation of Plaintiffs' rights.

47.     Unless Defendants' determination to implement Section 11 of the STOCK Act is reviewed and enjoined by the order of this Court, Defendants will cause irreparable injury to Plaintiffs, and Plaintiffs have no adequate remedy at law.

**Third Cause of Action**
**Fifth Amendment of the United States Constitution**
**(Plaintiffs Filing Prior to the STOCK Act)**

48.     Application of Section 11 of the STOCK Act retroactively to Plaintiffs who filed a Form 278 in 2012 but prior to passage of the STOCK Act would be an unlawful application of the STOCK Act, without valid justification, constituting a deprivation of liberty or property

without due process of law, in violation of the Fifth Amendment of the United States Constitution.

49.     Unless Defendants' unlawful practices implementing Section 11 of the STOCK Act are enjoined by the order of this Court, Defendants will cause irreparable injury to Plaintiffs, and Plaintiffs have no adequate remedy at law.

### Fourth Cause of Action
### Declaratory Relief

50.     Pursuant to 28 U.S.C. § 2201, an actual controversy exists between Plaintiffs and Defendants with respect to whether Plaintiffs' personal financial data can lawfully be posted on the Internet, and Plaintiffs are entitled to a declaratory judgment that Section 11 of the STOCK Act is unconstitutional.

WHEREFORE Plaintiffs respectfully request that the Court:

(1)     Declare Section 11 of the STOCK Act unconstitutional,

(2)     Declare that Defendants' actions are contrary to Plaintiffs' constitutional rights, powers, privileges, or immunities,

(3)     Enjoin all Defendants, preliminarily and permanently, from implementing Section 11 of the STOCK Act to make financial disclosure forms of covered Executive Branch employees or the information contained in them available on the websites of any agency of the United States or otherwise available on the Internet,

(4)     Enjoin all Defendants, preliminarily and permanently, from requiring employees to submit financial disclosure information so long as such information is subject to Internet publication by federal agencies,

(5)     Grant such further relief as may be just, and

(6)     Award Plaintiffs their costs and fees incurred in this action.

Dated: August 2, 2012

Respectfully Submitted,

/s/ Daron T. Carreiro
Jack McKay (D. Md. Bar No. 05628)
Thomas G. Allen
Daron T. Carreiro (D. Md. Bar No. 18075)
Kristen E. Baker
Vernon C. Thompson, Jr.
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, DC 20037
Office: (202) 663-8000
Fax: (202) 663-8007
Email: jack.mckay@pillsburylaw.com
      thomas.allen@pillsburylaw.com
      daron.carreiro@pillsburylaw.com
      kristen.baker@pillsburylaw.com
      vernon.thompson@pillsburylaw.com
*Counsel for Plaintiffs*


/s/ Arthur B. Spitzer
Arthur B. Spitzer (D. Md. Bar No. 08628)
American Civil Liberties Union of the Nation's Capital
4301 Connecticut Avenue, N.W., Suite 434
Washington, DC 20008
Office: (202) 457-0800
Fax: (202) 457-0805
Email: art@aclu-nca.org
*Counsel for Plaintiffs*