# Exhibit B



the voice of career federal executives since 1980

77 K Street N.E., Suite 2600 • Washington, D.C. 20002 • (202) 927-7000 • Fax (202) 927-5192 • www.seniorexecs.org

November 6, 2012

Office of Information and Regulatory Affairs
Attn: Mr. Kevin Herms
OMB Desk Officer for the Office of Government Ethics

Office of Government Ethics
Attn: Mr. Paul Ledvina
Agency Clearance Officer

Re: Emergency clearance notice and request for agency and public comments – 66FR 66075

Dear Mr. Herms and Mr. Ledvina:

The Senior Executives Association (SEA) represents the interests of career federal executives in the Senior Executive Service (SES), and those in Senior Level (SL), Scientific and Professional (ST), and equivalent positions. On behalf of the association we are submitting comments regarding the emergency clearance notice and request for comments on proposed OGE Form 201-A.

SEA has raised, and continues to have, strong opposition to the underlying law necessitating Form 201-A. P.L. 112-105, section 11(a) requires the Office of Government Ethics (OGE) to create a searchable database of the financial disclosure forms of certain federal employees, which includes Senior Executives and other senior level employees. SEA has raised concerns that making this information so readily available to the public will harm the personal security of federal employees (many of whom hold sensitive positions) and national security, as well as harming government operations.

The 1978 Ethics in Government Act provided a framework for ensuring transparency among government officials and high-level career federal employees. With the addition of the Privacy Act, safeguards were put in place so that sensitive financial information was not used for nefarious purposes and so federal employees would know who was requesting their information. Both laws were enacted well before the internet was in use and did not envision the safeguards needed, or the risks involved, with making this information easily accessible on the internet.

As the process for requesting financial disclosure forms currently stands, an individual requesting a Form 278 must fill out Form 201. This includes providing identifying information, designating the purpose of the request, specifying up to six individuals whose financial disclosure forms are being requested, and designating how the requestor would like to receive the information (by mail or picking it up in person). The requestor must also certify via signature that they understand the applicable laws and penalties governing usage or misuse of the information.

The current process has inherent safeguards built into it that are not available on the internet. First, a person must furnish a legitimate address to which the Form 278s can be sent or they must appear at OGE in person to receive the forms. This largely prevents a foreign entity from securing the information. Because the Form 201 is either mailed or emailed to an agency, and only six individual

financial disclosure reports can be requested at a time, this provides a de facto waiting period for the information, further providing another layer of security. It is unclear that the proposed Form 201-A would have these inherent safeguards.

Additionally, prior to OGE's modification of routine use that went into effect on August 30, 2012 (F.R. vo. 77, no. 147), release of financial disclosure forms to public requestors was not considered to be a routine use. The practice prior to the publication of the routine use was that requests for form 278s were subject to a written request and that the federal employee to whom the request applied could also request to know who had asked for their financial information. This is another safeguard and a long-standing practice in regard to finding a balance between public disclosure and a right to privacy. What remains for the prior practice after the publication of the routine use is unclear.

Although we understand the reason behind the proposed Form 201-A, we believe that it will do little to address the concerns mentioned above or safeguard the sensitive information contained in financial disclosure reports. Furthermore, the current notice in the Federal Register gives little information or specifics and raises many questions on what information would change from the current form and how it would interface with the internet database.

The STOCK Act requires OGE to create a searchable database of the financial disclosure forms of the federal employees specified in the legislation. This means an individual searching through the database would not have to specify which records they are looking at, as currently required. Would Form 201-A request the names of individuals that are being searched as form 201 currently does? If not, how does OGE propose to comply with the prior practice where federal employees may learn if their information has been requested and who has requested it?

Another issue that SEA believes must be addressed before OGE moves forward with the proposed form is how requesters will certify that they understand the rules and penalties associated with use of financial disclosure information. Currently this is required by a signature – not available on an internet form. Furthermore, the Federal Register notice does not provide a process for reviewing the 201-A forms that are submitted on the internet to ensure information has been filled out completely and that no questions arise from the information submitted.

It is important to also consider that Congress has approved delays to the internet posting deadline and is likely to consider a further delay during the lame-duck session. This should provide OGE with additional time to solicit comments that inform decisions regarding Form 201-A. Furthermore, prior to authorizing the use of a new form, SEA requests that a draft Form 201-A and specifics on processes and information contained in the form be provided. Absent such a framework, it is difficult to gauge the practical utility of the information that OGE highlights in its request for comments.

Given the importance of the information at the center of the issue and the national and personal security implications, SEA urges OGE to delay requesting the authority to use Form 201-A until the questions and issues raised above have been addressed.

Sincerely,

CAROL A. BONOSARO                           WILLIAM L. BRANSFORD
President                                                 General Counsel